UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
ANTHONY MUHAMMAD,             )
                              )
            Plaintiff,        )
                              )
                              )   Civil Action No. 08-0859 (PLF)
                              )
DISTRICT OF COLUMBIA *et al.*,)
                              )
            Defendants.       )
_____)

OPINION

       In this civil rights action brought under 42 U.S.C. § 1983 and the common law, the plaintiff, proceeding *pro se*, alleges that an officer of the District of Columbia Metropolitan Police Department ("MPD") yelled at him and "forcefully pushed" him during an encounter on June 23, 2007. Compl. ¶ 13. In addition to suing police officer Danellia Santos,[1] plaintiff has sued the District of Columbia, former Mayor Adrian Fenty in his official and individual capacity, Police Chief Cathy Lanier in her official and individual capacity, and "Unidentified Supervisory Metropolitan Police Officers." Compl. Caption. On November 4, 2008, the Court dismissed the complaint against Mayor Fenty and Chief Lanier. *See Muhammad v. District of Columbia*, 584 F. Supp. 2d 134 (D.D.C. 2008). The remaining named defendants, the District of Columbia and Officer Santos, now move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Upon consideration of the parties' submissions and the entire record,

---

       [1] Plaintiff misspelled Officer Santos' first name in the complaint as "Danielle." The Court will use the correct spelling as it appears in the Declaration of Danellia Santos proffered as Exhibit 1 to defendants' motion for summary judgment.

the Court will grant defendants' motion in part and deny it in part.  The court will grant judgment to defendants on all claims except plaintiff's common law claim of assault.

I.  BACKGROUND

Plaintiff alleges that "[o]n or about June 23, 2007, at approximately 4:50 p.m., [he] was present at the 'Georgia Avenue Day' festivities on Georgia Avenue, N.W., in Washington, D.C." Compl. ¶ 11.  While he and an associate were "walking in the street, heading northbound on Georgia Avenue," *id*., Officer Santos, while riding her bike, "yelled to Plaintiff, 'Get on the sidewalk!'" *Id*. ¶ 13.  She then "without provocation, justification or consent recklessly and violently pushed me with her hands causing me to fall back and twist my ankle." Affidavit of Anthony Muhammad ("Muhammad Aff.") [Doc. # 29] ¶ 6.  The incident allegedly was "witnessed" by plaintiff's "associate and numerous other onlookers and patrons of the 'Georgia Avenue Day' events." *Id*. ¶ 7.  In response to plaintiff's protest against being pushed, Santos allegedly stated: "'I'm the police, that's why." *Id*. ¶ 8.  Plaintiff alleges that at the time of the encounter with Santos, "the sidewalks in the northbound direction on Georgia Avenue . . . were crowded[,] . . . thereby causing the street to serve as an alternate passage way . . . ."  He adds that the street was closed to "automobile traffic." *Id*. ¶ 4.

Officer Santos' version of the encounter is as follows.  She was "detailed to the Civil Disturbance Unit 24 to patrol the Georgia Avenue Festival ["hereafter the Festival"] [and] was assigned to a mountain bike and was in full uniform." Defs.' Mot. for Summ. J., Declaration of Danellia Santos ("Santos Decl.") [Doc. # 25-1] ¶¶ 3-4.  When the festival was nearing its end, "my officials ordered me to respond back and line up with other officers along the street to

conduct pedestrian traffic control by keeping pedestrians off the street, so Department of Public Works . . . sweeper/trash removal trucks can come through to clean the streets." *Id*. ¶ 5. "Plaintiff was walking on the street . . . . As he approached [] my right side, I waved him over to the sidewalk and told him to get out of the street and onto the sidewalk." *Id*. ¶¶ 7-8. According to Santos, plaintiff ignored her orders and "came within touching distance from me . . . ." *Id*. ¶ 10. When "[h]e continued to refuse my [verbal] order and told me the sidewalk was too crowded[,] I told him to get on the sidewalk a third time and stretched my arms to the side so that he could not walk around me. I then guided him to the sidewalk without physical contact." *Id*. ¶¶ 11-13. "Plaintiff then walked towards the sidewalk and continued walking northbound on the sidewalk on Georgia Avenue." *Id*. ¶ 14. Plaintiff returned "[f]ifteen to twenty minutes later . . . to take pictures of me with a cell phone and warned me that he was going to file a complaint against me." Santos states that she "did not respond, and [plaintiff] walked off." *Id*. ¶¶ 15-16.

Plaintiff captions his claims as follows: Count 1: Violations of 42 U.S.C. § 1983; Count 2: Violations of 42 U.S.C. § 1983 Refusing or Neglecting to Prevent; Count 3: Assault; Count 4: Intentional Infliction of Emotional Distress ("IIED"). Count 2 is against the District of Columbia; the remaining counts are against Santos. *See generally* Compl. at 4-6. Plaintiff seeks a total of $800,000 in monetary damages and equitable relief. *Id*. at 6-7.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v.*

*Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d at 895 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255; *see also Mastro v. Potomac Electric Power Co.*, 447 F.3d 843, 849–50 (D.C. Cir. 2006); *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); *Washington Post Co. v. U.S. Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50; *see Scott v. Harris*, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'

") (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To defeat a properly supported motion for summary judgment, then, the non-moving party must have more than "a scintilla of evidence to support his claims." *Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001).

On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), which are jury functions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. In sum, "[t]he inquiry performed [at this phase] is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### III.  PLAINTIFF'S FEDERAL CLAIM

To make out a claim against an individual under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendant, while acting under color of state law, deprived him of "rights, privileges, or immunities secured by the Constitutions and laws" of the United States. 42 U.S.C. § 1983. As a general rule, government officials are personally liable under Section 1983 for constitutional violations only if they are shown to have been directly involved in the wrongful acts. *See Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993); *Meyer v. Reno*, 911 F. Supp. 11, 15 (D.D.C. 1996) (citing cases). A municipality may be held liable under Section 1983 if it is shown that the wrongdoing resulted from an unconstitutional policy, practice or custom promulgated or sanctioned by the municipality. *See Triplett v. District of Columbia*, 108

F.3d 1450, 1453 (D.C. Cir. 1997); *Muhammad v. District of Columbia*, 584 F. Supp. 2d at 138-39 (citing cases).

Defendants argue that they are entitled to judgment on plaintiff's Section 1983 claim because (1) Officer Santos as sued in her personal capacity is protected by qualified immunity, and (2) the evidence does not support a claim of municipal liability.  The Court agrees with both arguments.

### A. Qualified Immunity

Plaintiff claims that Santos "purposefully interfered with [his] liberty interests, his ability to freely exercise his right to travel on a public thoroughfare, and his quiet enjoyment of a public event." Compl. ¶ 17.  Plaintiff did not identify in the complaint the constitutional provisions under which his claims were brought, but the Court previously found in resolving defendants' motion to dismiss that plaintiff had sufficiently pleaded violations of the First Amendment's right to assemble peaceably and the Fifth Amendment's due process clause. *Muhammad v. District of Columbia*, 584 F. Supp. 2d at 138.

In his opposition to the pending summary judgment motion, plaintiff states for the first time that Officer Santos' conduct was "a clear violation of [his] Fourth Amendment" rights, Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") [Doc. # 28] at 4, but he does not elaborate on this statement.  Plaintiff also quotes *Saucier v. Katz*, 533 U.S. 194 (2001), which he acknowledges is "[i]n the use of force context." *Id*.  " '[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied.' " *Scott v. Harris*, 550 U.S. at 381 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596–597

(1989)). And "a claim of excessive force in the course of making [a] . . . seizure of [the] person . . . [is] properly analyzed under the Fourth Amendment's objective reasonableness standard." *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)) (alterations in original) (internal quotation marks omitted). Plaintiff did not present an excessive use of force claim in the complaint, and he did not amend the complaint to include such a claim. The Court nevertheless finds that the qualified immunity analysis applies with equal force to any claim plaintiff may have brought under the Fourth Amendment.

> The doctrine of qualified immunity is summarized as follows:
>
> The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Wilson v. Layne*, 526 U.S. 603, 614 (1999) (holding that qualified immunity turns upon the "objective legal reasonableness of the officers' action, assessed in light of the legal rules that were clearly established at the time the action was taken" (internal quotation marks and citation omitted)).

*Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007). A defendant's entitlement to qualified immunity is a question of law to be decided by the court. *See id*. "Whether an official protected by qualified immunity may be held personally liable . . . generally turns on the objective legal reasonableness of the action." *Wilson v. Layne*, 526 U.S. at 614.

To overcome an immunity defense, a plaintiff must show that defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ashcroft v. al-Kidd*, — U.S. —, 131 S.Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*,

483 U.S. 635, 640 (1987)) (alterations omitted); *accord Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001).  In determining whether an official has qualified immunity, the Court engages in a two-step inquiry.  The threshold question is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)), *rev'd on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Scott v. Harris*, 550 U.S. at 377.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier v. Katz*, 533 U.S. at 201.  If the plaintiff's rights were violated, the court must then assess whether, "in light of the specific context of the case," the right in question was "clearly established."  *Id*.

"[L]ower courts have discretion to decide which of the two prongs of [the] qualified-immunity analysis to tackle first."  *Ashcroft v. al-Kidd*, 131 S.Ct. at 2080 (citing *Pearson v. Callahan*, 555 U.S. at 236); *accord Taylor v. Reilly*, No. 10-5153, — F.3d —, 2012 WL 2892392, at *2 (D.C. Cir. July 17, 2012).  As the Court observed in *Pearson*, "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  *Pearson v. Callahan*, 555 U.S. at 237; *see Youngbey v. March*, 676 F.3d 1114, 1117 (D.C. Cir. 2012) (declining to address whether the Fourth Amendment was violated where the undisputed factual record established the lawfulness of the officers' actions under the objective reasonableness standard).

Assuming, without deciding, that Santos violated plaintiff's constitutional rights, the Court finds that she is entitled to qualified immunity on the second part of the inquiry

8

because the right in question was not "clearly established." "[T]he protection of qualified immunity is available if 'a reasonable officer could have believed that [his or her actions were] lawful, in light of clearly established law and the information the officers possessed.' " *Youngbey v. March*, 676 F.3d at 1117 (quoting *Wilson v. Layne*, 526 U.S. at 615) (second brackets in original). And it is not enough simply to allege in conclusory terms the violation of a clearly established but conceptually broad constitutional right, such as the right to assemble or the right to liberty. *See Ashcroft v. al-Kidd*, 131 S.Ct. at 2084 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.") (citations omitted). Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense . . . ." *Anderson v. Creighton*, 483 U.S. at 640; *see Ashcroft v. al-Kidd*, 131 S.Ct. at 2083 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *see also Taylor v. Reilly*, 2012 WL 2892392, at *3. A clearly established right is derived from an examination of Supreme Court rulings and controlling authority in a court's respective jurisdiction; if neither of those sources provide controlling authority the Court " 'must [then] determine whether there is "a consensus of cases of persuasive authority.' " *Youngbey v. March*, 676 F.3d at 1117 (quoting *Wilson v. Layne*, 526 U.S. at 615).

" 'Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for [her] actions exists . . . .' " *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) (quoting *Bilida v. McCleod*, 211 F.3d 166, 174–75 (1st Cir. 2000)). Plaintiff has not cited any case, and the Court has found none,

9

that reasonably would have placed Santos on notice that her limited restraint of plaintiff's movement – , *i.e.*, forcing him to move from the street to the sidewalk on order from her superiors to make way for street sweepers following a festival – violated a clearly established right protected by either the First, the Fourth, or the Fifth Amendment.  The Court therefore finds that Officer Santos is entitled to qualified immunity on Count 1 of the complaint for relief under Section 1983.

### B. Municipal Liability

The Court previously found that plaintiff's representation that he might establish a pattern of misconduct by Officer Santos and deliberate indifference by her supervisors to an obvious need for training and disciplining was sufficient to survive the District's Rule 12(b)(6) motion to dismiss.  *Muhammad v. District of Columbia*, 584 F. Supp. 2d at 138-39.  Again assuming, without deciding, that a constitutional violation occurred, the question is whether plaintiff, having now engaged in discovery, has presented sufficient evidence to create a triable issue on the District's liability under Section 1983.  *Cf. Zhi Chen v. District of Columbia*, 808 F. Supp. 2d 252, 258 n.2 (D.D.C. 2011) ("Since during discovery, Ms. Chen has failed to produce or elicit any evidence . . . to support [her] allegation . . ., that allegation cannot serve as the basis of [a claim] at the summary judgment stage.").

Plaintiff's claim depends solely on the undisputed fact that MPD's Office of Police Complaints ("OPC") had investigated 13 complaints against Officer Santos prior to plaintiff's encounter with her in June 2007.  *See Muhammad v. District of Columbia*, 584 F. Supp. 2d at 139; Defs.' Ex. 3 ("Complaint History").  That fact alone, however, is insufficient to

advance these proceedings from the summary judgment stage to a trial.  For there to be municipal liability, a jury must find from admissible evidence that the District was "the driving force" behind the alleged constitutional violations based on a theory of deliberate indifference to a known risk of such harm.  *Muhammad v. District of Columbia*, 584 F. Supp. 2d at 138. "Deliberate indifference means that 'faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.' " *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 94 (D.D.C. 2011) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)); *see Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) ("For suits alleging failure to train or supervise, plaintiffs must also establish that the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that policymakers can be said to have been deliberately indifferent to the need.") (citations omitted).  Furthermore, a municipality's failure to train its officers or employees adequately qualifies as a custom or policy that violates Section 1983 only when that failure "amounts to deliberate indifference towards the constitutional rights of persons in its domain."  *Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 278 (D.D.C. 2006) (quoting *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000)) (other citation omitted).

        The record belies plaintiff's claim of deliberate indifference.  First, the evidence of complaints against Santos during the relevant time period shows that just two of those complaints were sustained, and they were for "insubordination" and "rude/unprofessional" conduct.  Defs.' Ex. 3.  Such conduct is not suggestive of the asserted unconstitutional behavior plaintiff alleges about which the District should have reasonably known.  Second, defendants

have proffered Santos' training history, which shows that she has completed numerous training sessions since the sustained complaints and leading up to the events underlying this action. *See* Defs.' Ex. 4 ("Class History").  This contradicts a claim of municipal inaction.  Third, the evidence shows that OPC did not ignore plaintiff's complaint against Santos but rather launched an investigation, which was closed on February 6, 2008, upon a finding of "insufficient facts" to support plaintiff's allegations that Officer Santos had pushed him and was rude to him.  Defs.' Ex. 3.

        In his opposition, plaintiff asserts that the District has failed to enforce "The Personnel Performance Management System" and a 2001 Memorandum of Agreement ("MOA") between the District and the Department of Justice concerning the use of force by MPD officers. *See* Pl.'s Opp'n at 5-6 & Attachments.  Assuming this is even relevant, plaintiff admitted at his deposition, taken on May 26, 2011, that the MOA required an officer who had been "red flagged" to be monitored and sent to training.  Defs.' Ex. 2, Muhammad Dep. 44:18-21.  And he has not proffered any evidence showing the District's noncompliance with that, or any other, requirement.  To the contrary, plaintiff could not identify during his deposition a District policy, custom, or practice that allowed MPD officers to continue to receive complaints without being sent to training, nor could he identify a policy that promoted the improper training or supervision of MPD officers.  Muhammad Dep. 44:7-11; 54:15-22, 55:1-4; 55:16-22.  In fact, when pressed, plaintiff seemed to admit the opposite, stating that MPD officers "go through adequate training. But implementing, practice, putting to use, it is [the] individual [officer].  It becomes another story."  Muhammad Dep. 55:11-13.  Plaintiff's deposition testimony suggests a claim predicated on a theory of respondeat superior, "which is never a basis for liability under Section 1983." *Zhi*

*Chen v. Monk*, 701 F. Supp. 2d 32, 38 (D.D.C. 2010). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city[.]" *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989).

In sum, plaintiff has not produced or elicited any evidence to support his allegation that the District was deliberately indifferent to a known risk of a constitutional violation, and he has not rebutted defendants' evidence supporting the opposite.  Consequently, the Court finds that no reasonable jury – when presented with defendants' unrebutted evidence and plaintiff's admissions –  could find for plaintiff on his municipal liability claim.  Defendants therefore are entitled to judgment on Count 2 of the complaint set forth as a Section 1983 claim against the District of Columbia.

## IV.  PLAINTIFF'S COMMON LAW CLAIMS

Whether Santos used physical force to remove plaintiff from the street and to what extent are material facts that are genuinely disputed by plaintiff and Officer Santos.  *See* Santos Decl. ¶¶ 11-13; Pl.'s Aff. ¶ 6.  The Court therefore will deny defendants' motion for summary judgment on Count 3 of the complaint for common law assault, which, in light of the supporting facts, will be construed to encompass a claim of battery.  *See Zhi Chen v. District of Columbia*, 808 F. Supp. 2d at 258 ("An assault is an intentional act and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim," while "[a] battery is an intentional act that causes a harmful or offensive bodily contact . . . . The unreasonable use of force by a police officer may be an assault and battery under District of Columbia law . . . .") (quoting *Evans–Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007)) (other citation omitted); *see also Castro*

*v. United States*, 540 U.S. 375, 381 (2003) (federal courts may ignore "the legal label that a *pro se* litigant attaches to a motion . . . to avoid inappropriately stringent application of formal labeling requirements") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*)); *Johnson v. United States*, 547 F.2d 688, 691 (D.C. Cir. 1976) ("the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states") (citation and internal quotation marks omitted).

The Court will grant defendants' motion for summary judgment on Count 4 of the complaint for IIED because even if a jury finds for plaintiff on the assault count, no reasonable jury could find that Officer Santos' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[,]" which is the first element of an IIED claim. *Zhi Chen v. District of Columbia*, 808 F. Supp. 2d at 261 (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)); *see id.* (noting that "liability under this tort "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965) ("RESTATEMENT")).

V.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment.  The Court will grant summary judgment to defendants on all counts of the complaint except Count 3 against Officer Santos for assault, and

will exercise supplemental jurisdiction over the surviving claim construed also as a claim of battery. A separate Order accompanies this Opinion.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   August 8, 2012